# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS, <br><br> Plaintiff, <br><br> v. <br><br> SHEET METAL WORKERS, LOCAL 73, <br><br> Defendant. <br> ———————————————————— <br> SHEET METAL WORKERS, LOCAL 73, <br><br> Defendant-Counter Plaintiff, <br><br> v. <br><br> CHICAGO REGIONAL COUNCIL OF CARPENTERS, <br><br> Plaintiff-Counter Defendant. | No. 10 C 2962 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

This dispute arose when two unions, the Sheet Metal Workers, Local 73 ("Sheet Meal Workers") and the Chicago Regional Council of Carpenters ("Carpenters Union"), each claimed interest in work at the "Apple Store." An arbitrator awarded Sheet Metal Workers the work, but Carpenters Union argues that the arbitration award is invalid. The Parties have filed cross-motions for summary judgment, the Carpenters Union asking that I invalidate the arbitration awards, and the Sheet Metal Workers asking that I enforce them. For the following reasons, I grant the Carpenters Union's motion for summary judgment and deny the Sheet Metal Workers' motion.

## I. PRELIMINARY ISSUES

The Carpenters Union includes various excerpts from a business seminar created by the law firm of Hogan Marren, Ltd. entitled "Business Agents' Training Session" from the winter of 2010 in their Rule 56.1 statement of facts. As part of the training session, the seminar addressed the resolution of jurisdictional disputes by the Joint Conference Board. Sheet Metal Workers object to these statements, specifically statements 2 through 6, on the basis of hearsay. I agree. Furthermore, the handout offered in support of these statements, Exhibit I, is hearsay within the meaning of Federal Rule of Evidence 801(c). Accordingly, I will not consider statements 2 though 6 or Exhibit I of Plaintiff-Counter Defendant's Rule 56.1 Statement of Facts.

## II. STATEMENT OF RELEVANT FACTS

The instant complaint concerns two arbitration awards that were entered on April 17, 2010 and April 28, 2010 respectively. Both the Chicago Regional Council of Carpenters ("Carpenters Union") and the Sheet Metal Workers, Local 73 ("Sheet Metal Workers") are labor organizations within the meaning of § 301 of the Labor Management Relations Act ("LMRA"). The Carpenters Union and Sheet Metal Workers are members of the Chicago & Cook County Building & Construction Trades Council ("the Council"), and through their membership are bound to the Standard Agreement for the resolution of jurisdictional disputes between the Construction Employers' Association ("Association") and the Council. Article VII of the Standard Agreement recognizes that the Standard Agreement is an arbitration agreement.

Bayside Interiors, Inc. ("Bayside") is a signatory to a Collective Bargaining Agreement with the Carpenters Union, but is not bound to the Standard Agreement. Bayside was awarded a contract to install stainless steel siding at a construction project located at 1580 N. Clybourn

Ave., Chicago, Illinois, known as the "Apple Store," and Bayside assigned the work to its employees represented by the Carpenters Union.

In April 2010, the Sheet Metal Workers filed a grievance with the Joint Conference Board to challenge Bayside's assignment of the installation of stainless steel siding to members of the Carpenters Union. The Carpenters Union was provided advance notice of the April 15, 2010 arbitration hearing, yet decided not to attend. On April 17, 2010, the Arbitrator issued his decision awarding the Apple Store work to the Sheet Metal Workers. The Carpenters Union, however, refused to recognize the Arbitrator's award. On April 22, 2010 the Sheet Metal Workers filed a complaint with the Secretary of the Joint Conference Board alleging that the Carpenters Union had violated the Arbitrator's award. Again, the Carpenters Union was provided with notice of the arbitration hearing. On April 28, 2010 the Arbitrator found that the Carpenters Union had violated the April 17, 2010 Award and imposed a $10,000 fine upon the Carpenters Union for noncompliance with the prior Award.

Following the Arbitrator's non-compliance award to the Sheet Metal Workers, the Carpenters threatened to shut down the Apple Store jobsite if Bayside reassigned the work to the Sheet Metal Workers. On May 7, 2010, Bayside filed a charge at the National Labor Relations Board ("NLRB") alleging that the Carpenters Union violated Section 8(b)(4(ii)(d) of the National Labor Relations Act by threatening to picket the job if the work was reassigned. Three days later on May 10, the Sheet Metal Workers disclaimed interest in the remaining installation at the Apple Store. On May 12, Bayside withdrew the unfair labor practice charge against the Carpenters Union. The NLRB never issued a notice of hearing pursuant to 10(k) of the National Labor Relations Act, nor did it hold a hearing concerning the work on the Apple Store Project.

The NLRB never issued a written opinion or findings concerning the jurisdictional dispute or the underlying charge.

**III. STANDARD OF REVIEW**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002). I will accept the nonmoving party's version of any

4

disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers*, *Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

**IV. DISCUSSION**

The Carpenters Union seeks to vacate the two arbitration awards entered in favor of the Sheet Metal Workers by the Joint Conference Board of the Cook County Building Trades ("JCB") on the basis that the National Labor Relations Board, not the JCB, had jurisdiction over the dispute. In fact, the first award is mooted by the fact that the Sheet Metal Workers withdrew its claim to the remaining work at the Apple Store. Remaining then, is the $10,000 award entered against the Carpenters Union for non-compliance with the Arbitrator's jurisdictional ruling.

The Carpenters Union argues that because the JCB lacked jurisdiction to hear the dispute, the arbitrator's awards in favor of the Sheet Metal Workers should be vacated. In the alternative, The Carpenters Union ask that I vacate the arbitrator's awards, including the $10,000 fine, because the Sheet Metal Workers disclaimed the work in dispute, and their disclaimer was accepted by Region 13 as a resolution to all claims the Sheet Metal Workers may have regarding the work in dispute. For the following reasons, I decline to enforce the $10,000 award entered against the Carpenters Union.

**A. The Joint Conference Board's Authority To Decide The Jurisdictional Dispute.**

Both Unions have acknowledged that they are bound by the Standard Agreement. Parties to the Standard Agreement recognize the authority of the JCB to decide jurisdictional disputes. The Standard Agreement also contains a liquidated damages provision in the event that a party refuses to recognize a JCB decision or award. The Carpenters argue that the arbitrator appointed

5

by the JCB did not have the authority to decide the jurisdictional dispute initiated by the Sheet Metal Workers because the employer awarding the work, Bayside, was not bound by the Standard Agreement giving the JCB jurisdiction over the dispute. Accordingly, Carpenters Union argues that it cannot be fined for refusing to turn over the work assigned to it by Bayside.[1]

Pursuant to the NLRA, the NLRB is empowered to decided disputes out of which unfair labor practices have arisen within the meaning of 29 U.S.C. § 158(b)(4)(D). Under Section 8(b)(4)(ii)(D), it is an unfair labor practice for a union to engage in or induce a strike or threaten an employer where the purpose is to force the employer to assign work to employees represented by that union rather than another labor organization. § 158(b)(4)(D). Section 10(k) of the Act provides that hearings on jurisdictional strikes will be heard by the Board unless the parties to the dispute have agreed upon methods for the voluntary adjudication of the dispute. The Board may proceed with determining a jurisdictional dispute pursuant to Section 10(k) of the Act only if there is reasonable cause to believe that § 158(b)(4)(D) has been violated. *Operating Engineers Local 150 (R&D Thiel),* 345 NLRB 1137, 1139 (2005).

Citing *NLRB v. Plasterers' Local No. 79, et al.*, 404 U.S. 116, 133-134 (1971), the Carpenters Union argues that the employer assigning the work must also agree to be bound to the method for the voluntary adjustment of the dispute to remove the case from the jurisdiction of the NLRB. In *Plasterers'*, the issue was whether an employer was a 'party' to the 'dispute' for purposes of section 10(k). Specifically, the question asked was whether the Board must dismiss a section 10(k) proceeding where the two unions, but *not* the employer, agreed upon a method of

---

[1] Neither party disputes that Bayside did not submit to the jurisdiction of the Arbitrator, nor does either party argue that Bayside was bound to arbitrate the labor dispute.

settlement. *Plasterers*, 404 U.S. at 118-119. The dispute in *Plasterers* arose when Plasterers' Local Union picketed certain job sites claiming that the work was theirs. *Id*. at 119. Before the picketing occurred, the Plasterers submitted their claim to the National Joint Board for Settlement of Jurisdictional Disputes ("Joint Board"). *Id*. Both unions were bound by the decision of the Joint Board, though neither employer had agreed to be bound by the Joint Board's procedures or decisions. *Id*. at 120. The Joint Board awarded work to the Plasterers, and when the employers refused to acknowledge the Joint Board's decision, the Plasterers picketed the work site. *Id*. at 121. This picketing was the basis for the 8(b)(4)(D) charges. A Board panel deemed the Joint Board decision "to lack controlling weight"[2] and awarded the work to the Tile Setters. *Id*. at 122. The Plasterers refused to accept the Board's decision, and a 8(b)(4)(D) complaint was filed against them. The Board "rejected the Plasterers' contention that even though the employer had not agreed to be bound by the Joint Board decision, the provisions of 10(k) precluded a subsequent Board decision because the competing unions had agreed upon a voluntary method of adjustment." *Id.* at 122.

In *Plasterers*, the Court held that an employer must be considered a party to the dispute that the Board must decide pursuant to § 10(k), and that absent private agreement, they must also be considered parties to any agreement to settle that will terminate the § 10(k) proceedings. *Plasterers*, 404 at 130-132. Underlying this decision was recognition that an employer should be given "a meaningful chance to participate" in the process as they have a strong interest the result. *Id*. at 133-134. Accordingly, the Court held that the Board is only divested of jurisdiction to

---

[2] The Court refused to give the Joint Board award controlling weight because of its "ambiguous nature." *Plasterers*, 404 U.S. at 122, n. 9.

7

decide section 10(k) disputes where all parties, including the employer, agreed to alternative means to resolve the dispute, such as arbitration. *Id*. The Court did not, however, discuss the enforceability of an arbitration award made outside the context of a section 10(k) proceeding.

Applying the rationale articulated in *Plasterers*, it seems clear that the NLRB cannot be divested of jurisdiction pursuant to section 10(k) unless all parties, including the employer, agreed to an alternative means of resolution. Here, however, no complaint was filed at the National Labor Relations Board alleging a violation of Section 8(b)(4)(ii)(d) until May 7, 2010. This complaint was filed after the Arbitrator had entered his two awards on April 17, 2010 and April 28, 2010. These facts distinguish the present case, because Plaintiffs argue that an arbitration that occurred *prior* to the NLRB assuming jurisdiction is invalid.

The Plaintiff then points to *IBEW Local 134 v. Chicago District Council of Carpenters, et al.*, for the proposition that JCB awards are only enforceable where an assigning employer is bound by the Standard Agreement. 149 F.Supp.2d 452 (N.D. Ill. 2001). Implicit in this reasoning is that if an employer must be involved in any adjudication made pursuant to § 10(k), then it must too be a necessary party to a jurisdictional arbitration outside of § 10(k). In *IBEW*, the Plaintiff sought to enforce a JCB decision compelling a contractor to award the work in question to IBEW. *Id*. at 458. The disputed work had been assigned to the Carpenters Union. *Id*. In *IBEW*, this Court held that neither the employer nor the Carpenters were bound by the Arbitrator's decision. There, the employer had not stipulated to the Standard Agreement and the jurisdictional dispute proceedings and did not enter an agreement to bind them to arbitration before the JCB. *Id*. at 456. Applying the principle that where all parties to an action are not bound to the decision of the jurisdictional dispute board, that forum was not a viable option for

8

resolving the dispute, the Court held that the Carpenters were not bound to the arbitration. *Id.* at 458. The Court in *IBEW* explicitly noted that "IBEW does not argue that Carpenters could be bound to arbitration even if Pepper [the contractor] is not." *Id*. at 458. That, however, is precisely what Sheet Metal Workers argue. Specifically, the Sheet Metal Workers contend that the Carpenters are bound by the decision of the JCB *regardless* of Bayside's status.

The case at hand is distinguishable from *IBEW* because here, the employer was not a party to the arbitration. Likewise, the arbitration award did not impose an explicit obligation on Bayside, though as a matter of course, the Carpenters' compliance with the award would have had at the least a minimal impact on Bayside.

Recognizing that the employers are considered a party to a proceeding pursuant to § 10(k), I note that the proceeding before the Arbitrator occurred prior to any alleged violation within the meaning of §§ 8(b)(4)(D) and 10(k) of the Act. Prior to May 7, 2010, no charges were filed at the National Labor Relations Board, nor were any allegations made that Section 8(b)(4)(ii)(D) had been violated. Though the decision of the Arbitrator did not bind Bayside, it is likely that it did bind both Unions. The two Unions were parties to the Standard Agreement and voluntarily agreed to arbitrate jurisdictional disputes. Accordingly, I would be inclined to deny the motion (1) on the basis that the only part of the award in question here is in dispute between two parties over whom the arbitrator had jurisdiction and (2) that the employer, over whom there was no jurisdiction, neither has nor had any stake in a decision over how much money one union owes to another. I do not reach this question because there is a clear and separate ground for a decision in favor of the Carpenters Union.

**B. The Impact of Sheet Metal Workers' May 10, 2010 Disclaimer.**

Prior to Region 13 issuing a Notice of 10(k) Hearing, the Sheet Metal Workers disclaimed the work in dispute which was also the subject of the JCB arbitration awards. Region 13 accepted the disclaimer and sought a withdrawal of Bayside's charge. The Carpenters Union argues that Region 13's acceptance of the Sheet Metal Workers' disclaimer bars them from enforcing the JCB's awards against the Carpenters Union. I agree.

Pursuant to the "Safeway rule" if one union claiming work effectively renounces its claim, the 10(k) proceedings are aborted, despite legitimate interests an employer might have in securing a Board decision. *Plasterers'*, 404 U.S. at 134. In *Pepper Construction Co. v. International Union of Operating Engineers, Local 150*, 749 F.2d 1242, 1246-47 (7th Cir. 1984), the Court articulated two principles underlying the Board's acceptance of disclaimers. First, the disclaimer of work will not be given effect if it appears that the union is merely attempting to avoid an authoritative decision on the merits. *Id*. at 1246. Second, the Board imposes a burden upon the disclaiming party to "establish 'a clear, unequivocal, and unqualified disclaimer of all interest in the work in dispute.'" *Id*. at 1247 (internal citation omitted). Here, the question presented looks to the effectiveness and breadth of the disclaimer.

In *Pepper*, Local 150 obtained back pay awards at arbitration against Pepper Construction for its failure to assign certain work to its members. 749 F.2d at 1244. After a jurisdictional dispute hearing before the NLRB, Local 150 disclaimed "any claim" it had to the work in dispute. *Id*. While the NLRB dispute was pending, Pepper Construction filed suit to vacate the arbitration award. *Id*. The district court ruled in favor of Local 150, however, on appeal, the Seventh Circuit reversed, holding that Local 150's attempts to enforce the back pay awards was inconsistent with its unequivocal disclaimer of "any claim" to the work. *Id*. at 1247. The Court

also noted that "the back pay award constituted one aspect of the work dispute in this case. Both the back pay award entered by the Joint Committee and the prospective work assignment before the Board involved the same dispute." *Id*.

The *Pepper* Court noted that Local 150 manifested no intention to pursue the back pay award and explicitly disclaimed "any claim" to the work in dispute. *Id*. at 1247. Considering the Board's "reluctance to find disclaimers to be unequivocal," the Seventh Circuit determined that Local 150's disclaimer encompassed back pay. Specifically, the Court noted that Local 150's attempt to enforce the award "does not retroactively transmogrify the unequivocal disclaimer into a partial disclaimer that preserved the right to receive back pay." *Id*. at 1247.

The Sheet Metal Workers argue that *Pepper* is inapplicable to this case at hand. First, they note that the disclaimer specifically states that it disclaims its interest in "the remaining installation of the stainless steel exterior siding on the Apple Store project." Accordingly, the interpretation of "any claim" is not applicable to this case. Next, the Sheet Metal Workers states that they did not agree to relinquish the $10,000 fine award as a condition of disclaimer. Finally, Sheet Metal Workers argues that whereas in *Pepper*, the underlying arbitration award involved a backpay award covering the same work, here, the $10,000 fine was for non-compliance. The Sheet Metal workers argue that because a party can pursue a legitimate contractual claim, even when work is awarded to a different party, they are still entitled to the $10,000 fine imposed by the arbitrator.

Sheet Metal Workers point to *Hutter v. I.U.O.E.*, *Local 139*, 862 F.2d 641, 645 (7th Cir. 1988) and *Miron v. I.U.O.E., Local 139*, 44 F.3d 558, 567 (7th Cir. 1995) to support the enforcement of the fine. The facts in *Hutter* and *Miron* are almost identical. In *Hutter*, The Hutter Construction Company ("Hutter") was a signatory to the Area II Agreement with the

11

Operators. 862 F.2d at 642. Hutter subcontracted masonry work to Bill Dentigner, Inc. ("BDI"), who was a signatory to the Laborers' Collective Bargaining Agreement, but not to the Area II Agreement. *Id*. BDI then assigned the work to the Laborers. *Id*. Subsequently, the Operators filed a grievance alleging that Hutter had violated the Area II Agreement by subcontracting its work to BDI. *Id*. at 643. The arbitrator found that the dispute was not jurisdictional, ruled in favor of the Operators, and ordered Hutter to provide back pay to individual members of the Operators. *Id*. Unhappy with the decision of the arbitrator, the Laborers staged a one day strike prompting Hutter to file a § 8(b)(4)(D) grievance. *Id*. The NLRB held that the Laborers had a superior claim to the work. *Id*. Later, a district judge granted summary judgment in favor of the Operators on its claim to enforce the arbitrator's award. The Seventh Circuit affirmed.

The Seventh Circuit found that the Operators' subcontracting grievance was a non-jurisdictional claim. *Hutter*, 862 F.2d at 644. The Court explained that the Operators' grievance with Hutter arose at the moment that Hutter contracted with BDI; they would have had a legitimate grievance even had BDI assigned the work to the Operators themselves. *Id*. A second consideration articulated by the Court was that the Area II Agreement awarded backpay as a remedy for a breach of its subcontracting provision. *Id*. No such award was due in jurisdictional disputes.

The Court then considered whether the arbitrator's award of backpay conflicted with the NLRB decision awarding the work to the Laborers. "When an arbitration award conflicts with an NLRB decision, the NLRB decision takes precedence." *Id*. at 645 (citing *Cary v. Westinghouse*, 375 U.S. 261, 272 (1964). The Court held that the arbitrator's and NLRB's awards were "consistent remedies that reflect the divergent issues addressed in the respective proceedings."

*Id*. "The NLRB itself recognizes that the losing party in a § 10(k) award may continue to pursue its contractual remedies against the general contractor." *Miron*, 44 F.3d at 567.

Finally, Hutter argued that the Operators abandoned their claim to the arbitrator's award by sending a letter disavowing "the use of threats to engage in work stoppages. *Hutter*, 862 F.2d 641 at n. 20. "The letter, however, did not disavow any *claim* to the forklift work." *Id*. The Seventh Circuit noted that "the rule is that an unequivocal disclaimer of any *claim* to the work precludes a party from enforcing an arbitration award based on that claim." *Id*. (citing *Pepper Construction Co. v. International Union of Operating Engineers Local 150*, 749 F.2d 1242 (7th Cir. 1984)).

Here, the Sheet Metal Workers equate that arbitrator's fine to the contract disputes described in *Hutter* and *Miron*. The Court in *Hutter* acknowledged that a party is permitted to pursue a "legitimate contractual claim" that is independent of a "superior overall" claim to the work. *Hutter*, 862 F.2d at 645. The fine imposed by the arbitrator, however, is not an independent contractual claim. The fine arose specifically out of the jurisdictional dispute between the two Unions over the Apple Store work, and not out of any preexisting contract between the Sheet Metal Workers and Bayside. Though the Sheet Metal Workers' disclaimer does not disclaim "any interest" in the Apple Store project, the NLRB has a strong interest in resolving claims and accepting unqualified disclaimers. The Sheet Metal Workers did not express any interest in pursuing payment of the fines awarded by the Arbitrator, nor did it reserve its right to do so in its disclaimer. The Arbitrator's fine for non-compliance is not analogous to the contractual claims articulated in *Hutter* and *Miron*. Accordingly, I find that Sheet Metal Workers' disclaimer disclaimed not only its interest in the work at the Apple Store, but also its interest in the $10,000 fine imposed by the Arbitrator.

## V. CONCLUSION

For the foregoing reasons, Carpenters' motion for summary judgment is granted. Sheet Metal Workers' motion for summary judgment is denied.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: February 1, 2011